UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RUMERO ZIEBELL,

     Petitioner,

        v.                  CAUSE NO. 3:12-CV-774-MGG

SUPERINTENDENT,

     Respondent.

## OPINION AND ORDER

Rumero Ziebell, a prisoner without a lawyer, filed a habeas corpus petition to challenge his convictions for murder, conspiracy to commit murder, criminal confinement, and battery, under Case No. 82D02-109-CF-652. Following a jury trial, on May 31, 2002, the Vanderburgh Superior Court sentenced him to one hundred twenty-three years of incarceration.

## FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> On March 19, 2001, the State charged Ziebell with three counts of dealing in methamphetamine and one count of dealing in marijuana. Ziebell thought that a "snitch" named Mackey was involved in the charges. Transcript at 116. In fact, Mackey was not the confidential informant. However, in late May of 2001, Ziebell told Al Gross and Dean Everett that he wanted to kill Mackey and offered Gross or Everett $1500 to do so. Everett agreed to kill Mackey.

On May 27, 2001, Everett and Ronald Mackey were driving in Mackey's van. The evidence at trial demonstrated that Ziebell, Everett, and Gross actually intended to kill Dallas Mackey, Ronald's brother, and mistook Ronald for Dallas. Ziebell and Gross followed the van. After stopping, Mackey was removed from the van and severely beaten. Mackey was then put back into the van, and Everett drove him to Kentucky. Everett then shot Mackey in the head with Ziebell's shotgun. Ziebell and Gross drove Everett back to Indiana. Ziebell admitted that he participated in Mackey's murder.

The State charged Ziebell with murder, conspiracy to commit murder, a class A felony, confinement, a class B felony, battery, a class C felony, and being an habitual offender. During the jury trial, the trial court admitted photographs of the crime scene and Mackey's injuries over Ziebell's objections. The trial court also admitted evidence of Ziebell's prior drug dealing over his objections and refused to grant a mistrial based upon the admission of the prior drug dealing evidence. However, the trial court admonished the jury to consider the evidence of Ziebell's drug dealing only as to motive. The jury found Ziebell guilty of murder, conspiracy to commit murder, confinement, and battery.

* * *

The jury found Ziebell guilty of being an habitual offender.

The trial court sentenced Ziebell to: (1) ninety-five years in the Indiana Department of Correction for the murder conviction enhanced by Ziebell's status as an habitual offender; (2) fifty years for the conspiracy to commit murder conviction to run concurrent with the sentence for the murder conviction; (3) twenty years for the confinement conviction to run consecutive to the sentence for the murder conviction; and (4) eight years for the battery conviction to run consecutive to the sentence for the confinement conviction. Thus, Ziebell received an aggregate sentence of 123 years in the Indiana Department of Correction.

ECF 7-5 at 3-5; *Ziebell v. State*, 788 N.E.2d 902, 906–07 (Ind. App. 2003).

<u>PROCEDURAL DEFAULT</u>

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A);

*Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

In the petition, Ziebell asserts forty grounds for habeas relief, including claims or trial court error, ineffective assistance of counsel, and prosecutorial misconduct. By contrast, he included only five of these grounds in his petition to transfer to the Indiana Supreme Court at the post-conviction stage, and, on direct appeal, he declined to file petition to transfer. ECF 7-10. Additionally, the Court of Appeals of Indiana found that Ziebell had waived one of these five grounds, the claim that the prosecution improperly suggested that Ziebell intended to kill the victim rather than the victim's brother, by failing to raise it on direct appeal. ECF 7-9 at 5-6. Therefore, the court will consider the

merits of the claims that he had a conflict of interest with respect to appellate counsel and that trial counsel provided ineffective assistance by failing to call Vedelski Miller, by failing to cross-examine Edward Chumley, and by failing to object to hearsay statement during the testimony of Phyllis Gross. The remaining claims are procedurally defaulted.

Ziebell asserts that ineffective assistance of appellate counsel caused him to waive the claim that the prosecution improperly suggested that Ziebell intended to kill the victim rather than the victim's brother. A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). "Meritorious claims of ineffective assistance can excuse a procedural default." *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014). "But those claims must themselves be preserved; in order to use the independent constitutional claims of ineffective assistance of trial and appellate counsel as cause to excuse a procedural default, a petitioner is required to raise the claims through one full round of state court review, or face procedural default of those claims as well." *Id.* This assertion of cause-and-prejudice and the underlying claim of prosecutorial misconduct are closely related to Ziebell's fairly presented claims, so the court will discuss these issue at greater length below.

STANDARD OF REVIEW

"Federal habeas review . . . exists as a guard against extreme malfunctions in the

state criminal justice systems, not a substitute for ordinary error correction through

appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim—
>     (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>     (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that
> clearly established Federal law for purposes of §2254(d)(1) includes only
> the holdings, as opposed to the dicta, of this Court's decisions. And an
> unreasonable application of those holdings must be objectively
> unreasonable, not merely wrong; even clear error will not suffice. To
> satisfy this high bar, a habeas petitioner is required to show that the state
> court's ruling on the claim being presented in federal court was so lacking
> in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded
> disagreement.

*Woods,* 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants

are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To

warrant relief, a state court's decision must be more than incorrect or erroneous; it must

be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's

determination that a claim lacks merit precludes federal habeas relief so long as

fairminded jurists could disagree on the correctness of the state court's decision."

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

<u>ANALYSIS</u>

<u>Prosecutorial Misconduct</u>

Ziebell's arguments during post-conviction proceedings in State court and in this habeas case focus on a complicated but coherent theory. According to Ziebell, the information obtained by the prosecution indicated that Ziebell believed that the victim's brother was the confidential informant; that Ziebell intended to murder the confidential informant; and that the victim was murdered as a result of mistaken identity. However, the prosecution opted to conceal this nuance from their case and coached witnesses to craft their testimony to also conceal this nuance. Similarly, trial counsel declined to call witnesses, including Vedelski Miller, that would have testified to Ziebell's belief that the victim's brother was the confidential informant; that Ziebell would not have mistakenly identified the victim as the victim's brother given their distinct appearances and his familiarity with each of them; that the victim's brother had died before the victim was murdered; and that Ziebell became aware of the victim's brother's death before the victim was murdered. In other words, Ziebel contends, these witnesses would have demonstrated that Ziebell had no motive to murder the victim.

Based on the alleged concealment and witness coaching, Ziebell argues that the prosecution engaged in misconduct. "In evaluating a claim of prosecutorial misconduct as a violation of the petitioner's due process right to a fair trial, the inquiry is whether the prosecutor's closing argument statements so infected the trial with unfairness as to

make the resulting conviction a denial of due process." *Shepard v. Lane*, 818 F.2d 615, 621 (7th Cir. 1987). The relevant factors include: "1) whether the prosecutors' statements manipulated or misstated the evidence; 2) whether the statements implicated specific Bill of Rights provisions such as the right to counsel or the right to remain silent; 3) whether the improper statements were an invited response to the argument of defense counsel; 4) whether the trial court instructed the jury to disregard the improper statements; 5) whether the defense had and used the opportunity for rebuttal to counter the prosecutors' statements; and 6) the weight of the evidence against the defendant." *Id.* "If the improper statements do not specifically implicate constitutional rights, a habeas petitioner must demonstrate that the outcome of the trial would have been different. *Id.* at 622.

Relatedly, Ziebell argues that trial counsel provided ineffective assistance by failing to call witnesses who would have demonstrated that he had no motive for killing the victim, including Vedelski Miller and Ziebell's brother. He also argues that trial counsel should have impeached Edward Chumley by cross-examining him about the nature of his cooperation with the prosecution. To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice

under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland*." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

According to the probable cause affidavit, Ziebell believed that the victim's brother, Dallas Mackey, was the confidential informant, and Ziebell intended to kill confidential informant. PCR Ex. 16. The probable cause affidavit further states that Ziebell conspired with two other individuals to kill the confidential informant but instead killed the victim, Ronald Mackey, and that Ziebell did not understand that the victim was Ronald Mackey rather than Dallas Mackey until after the murder. *Id.*

During opening statements, the prosecution argued as follows:

> On that particular weekend, Mr. Ziebell enlisted the aid of two other individuals to take care of his little problem with the justice system the only way he knew how and get out of his drug case. How? To kill the snitch. Not just the snitch, kill he . . . who he thought was the snitch. On Saturday, May 26, 2001, Rumero Ziebell, Dean Everett picked Allen Gross up at Allen Gross's house behind the Deerhead Tavern. They drove out to Ronald Mackey's house no less than three times on that Saturday and early Sunday morning. They have a plan. And what is their plan to get rid of the snitch? Part A. Lure who they think is the snitch out of their house. Dean Everett lures Ronald Mackey out of his home under the presence that Mr. Everett needs a ride.

Trial Tr. 28.

Edward Chumley, Ziebell's friend, testified as follows:

**Prosecution:** Now, Mr. Chumley, what did Rumero, Mr. Ziebell tell you what kind of drug case this was or?

**Chumley:** To the best of my memory, he said it was a case for methamphetamine that somebody had wore a wire against him.

**Prosecution:** Did he ever say anything about a snitch being involved?

**Chumley:** Yes, sir.

**Prosecution:** What did he say about the snitch?

**Chumley:** He said that he thought that the snitch was a gentleman named Mr. Mackey, and it would be nice if something happened to him where, if he wasn't there to testify, that the State would have no case against him.

**Prosecution:** Okay, did he ever discuss with you ways of getting out of his drug case, specifically how to get rid of a snitch?

**Chumley:** Yes, sir.

**Prosecution:** Now, what did he say in regards to ways of getting rid of a snitch?

**Chumley:** Well, several times he talked about just beating the guy up then he talked about injecting poison into him, or, you know, having him killed, you know.

* * *

**Trial counsel:** When you spoke to your attorney, did you get implied or direct -- do you have implied -- do you believe that testifying here today would help out your other -- your other criminal cases?

**Chumley:** Ah, really have no idea whether it will or not.

*Id.* at 116-17, 119.

Similarly, Phyllis Gross, the spouse of Allen Gross, testified that she overhead Ziebell, Everett, and Allen Gross discuss a plan to beat up "the dude" to prevent him from testifying against Ziebell. *Id.* at 127-33. Throughout direct examination, Phyllis

Gross referred to the subject of the plan as "the dude" or "the guy," and the prosecution and trial counsel incorporated these references into their questioning. *Id.* at 122-49.

Phyllis Gross also testified that she received letters that she believed were from Ziebell. *Id.* at 138. These letters instructed Phyllis Gross to tell Edward Chumley "exactly what to say to Verdelski," who had served as Ziebell's trial counsel in the drug-related criminal case and in the murder case prior to trial. Trial Ex. 39, 40, 41. The suggested narrative was that Dean Everett wanted to kill Dallas Mackey for payment from Ziebell but, when Everett realized that Dallas Mackey had already died, he killed Ron Mackey instead. *Id.* The letters indicated that Ziebell had other witnesses who would testify that he was not involved in the murder. *Id.*

Billie Jean Yancey, Ziebell's former spouse and codefendant in his drug-related criminal case, testified that she recognized Ziebell's shotgun from photographs of the crime scene. Trial Tr. at 194-95. She also testified that Dallas Mackey and Ronald Mackey each purchased drugs from Ziebell and that the confidential informant was an individual who was neither Dallas Mackey nor Ronald Mackey. *Id.* at 183, 188. Yancey and a handwriting expert identified the handwriting in the letters received by Phyllis Gross as Ziebell's handwriting. *Id.* at 189-90. Detective Book and Detective Winters testified that Ziebell confessed to the facts included in the probable cause affidavit but that Ziebell refused to have his confession recorded it via written statement or otherwise. *Id.* at 232.

Trial counsel did not present evidence in Ziebell's defense. *Id.* at 296. At closing, trial counsel attacked the credibility of the prosecution's witnesses, noted that Phyllis

Gross' story had changed on numerous occasions, that Yancey was an ex-spouse who did not like Ziebell, and that the detectives had no recording to support their testimony regarding Ziebell's confession. *Id.* at 313-23.

At the post-conviction stage, Vedelski Miller testified that he served as counsel on Ziebell's related drug case and also served as counsel in the murder case but withdrew before trial. PCR Tr. 212. He testified that, in the weeks before the murder of Ronald Mackey, Ziebell rejected a plea offer in the drug case because he had discovered that Dallas Mackey, whom he believed to be the confidential informant, had died. *Id.* at 213-16. Edward Chumley testified that, at the request of the prosecution, he had referred to the intended target as "Mr. Mackey" rather than "Dallas Mackey" and that the prosecuting attorney promised him that, in exchange for his cooperation, he would not file additional charges against him and would offer him a more lenient plea agreement. *Id.* at 416-18, 432. The prosecuting attorney also testified and denied the existence of undisclosed agreements with Chumley and telling Chumley how to testify. *Id.* at 312, 321. He also testified that he did not find information related to Ziebell's beliefs about the confidential informant's identity or death to be material because Ziebell had confessed to arranging Ronald Mackey's death. *Id.* at 368-72. He also knew that the confidential informant had not died and had reason to suspect that Ziebell had poisoned Dallas Mackey. *Id.* at 350, 366.

John Clouse, who served as counsel in the murder case after Attorney Miller but withdrew prior to trial, testified that he also represented Ziebell on direct appeal. *Id.* at 6 He testified that his knowledge of Ziebell's substantial efforts to suborn perjury at trial

constrained his appellate strategy. *Id.* at 12, 17-23. Attorney Arnaez testified that he served as counsel for trial and that his strategy was to discredit the prosecution's witnesses, including the detectives, Edward Chumley, Billie Jean Yancey, and Phyllis Gross. *Id.* at 208-09. He did not recall Ziebell telling him that he would not have killed Ronald Mackey because he knew that Dallas Mackey had died. *Id.* at 115. He explained that he did not call Ziebell's brother as a witness, whose testimony Ziebell believed would have supported his proposed trial strategy, because the brother expressed that he did not want to perjure himself. *Id.* at 114-15.

On post-conviction review, the Court of Appeals of Indiana found that Ziebell had waived the prosecutorial misconduct claim because he could have raised it on direct appeal. ECF 7-9 at 5-6. The appellate court also found that Ziebell had not shown the prosecution withheld evidence or manipulated facts in such a way that it would have caused the conviction of an individual known to be innocent. *Id.* at 5-6. With respect to the ineffective assistance of counsel claim, the Court of Appeals of Indiana found no evidence trial counsel knew of Ziebell's proposed trial strategy and that trial counsel's strategy of discrediting the prosecution's witnesses was reasonable. *Id.* at 7-10. The appellate court also upheld the lower court's determination that Chumley's testimony at the post-conviction stage was not credible and observed that trial counsel had questioned Chumley about the nature of his cooperation with the prosecution. *Id.* at 19-20.

After reviewing the record, the court cannot find that the State court made an unreasonable determination regarding these claims. The court must presume that the

State court's fact determinations are corrected unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Ziebell argues that the State court erred by determining that Chumley's testimony at the post-conviction stage was not credible, but the record contains no other evidence corroborating Chumley's testimony. Given the absence of credible evidentiary support, claims that the prosecution engaged in misconduct by presenting him as a witness or that trial counsel was ineffective for failing to cross-examine him are not a basis for habeas relief.

Without Chumley's post-conviction testimony, the record contains no evidence that the prosecution fabricated evidence or concealed material exculpatory facts at trial. To Ziebell's point, the record does suggest that the prosecution had information that the intended target was Dallas Mackey but that Ronald Mackey was killed by mistake and that the prosecution made a conscious decision to not emphasize this detail as part of their case-in-chief.[1] But this detail was not material to the case-in-chief nor was it exculpatory given Ziebell's confession and given that the motive for killing Ronald Mackey was to prevent a confidential informant from testifying against him, mistaken identity or not.

In support of his claim of prosecutorial misconduct, Ziebell cites cases espousing the principal that "the use of inconsistent, irreconcilable theories to secure convictions against more than one defendant in prosecutions for the same crime violates the due

---

[1] Notwithstanding this observation, the prosecution referenced Dallas Mackey at trial on a few occasions, including during the direct examination of Yancey and during closing arguments. Trial Tr. 180-83, 302.

process clause." *Stumpf v. Mitchell*, 367 F.3d 594, 611 (6th Cir. 2004); *Smith v. Groose*, 205 F.3d 1045, 1051 (8th Cir. 2000); *Thompson v. Calderon*, 120 F.3d 1045, 1058-59 (9th Cir. 1997). Ziebell relies on an excerpt of the opening statement at the trial of Dean Everett, which suggests that the prosecution placed more emphasis on the mistaken identity issue in that trial. PCR Ex. 31. However, the use of varying degrees of emphasis on particular factual issues in different trials does not equate to the use of inconsistent, irreconcilable theories about how the crime occurred. And Ziebell cites no cases that suggest that the prosecution was required to place greater emphasis the mistaken identity issue solely to assist Ziebell with pursuing his proposed strategy that even trial counsel did not endorse. Therefore, the claim of prosecutorial misconduct is not a basis for habeas relief.

The State court's determination on the related ineffective assistance claim was similarly reasonable. Trial counsel made a reasonable strategic decision to attack the credibility of Gross, Chumley, and Yancey, each of whom had significant credibility issues, as well as the detectives who had no recording of Ziebell's confession and no explanation for why he chose to confess but declined to consent to a recording or for why they did not record him anyway. The court further observes comments by trial counsel and Attorney Clouse that they believed that pursuing Ziebell proposed strategy would have been tantamount to suborning perjury. Trial Tr. 13; PCR Tr. at 19-20, 114-15. This belief was reasonable when considering their communications with Ziebell's brother and the correspondence from Ziebell to Phyllis Gross.

Additionally, Ziebell has not demonstrated prejudice as it is unlikely that his proposed defense strategy would have been effective. To start, the strategy appears to concede that Ziebell had a plan to kill Dallas Mackey before Dallas Mackey's death and that he would not have confused Ronald Mackey for Dallas Mackey. The jury would have likely found these concessions to be significant during their deliberations about whether Ziebell had carried out a plan to murder Ronald Mackey. Further, it is unclear how trial counsel could have reasonably pursued this strategy. Attorney Miller's post-conviction testimony indicated that he did not have a clear recollection of the plea negotiations in the related drug case, and Ziebell's brother refused to testify at trial. Placing former defense counsel on the stand may have resulted in the waiver of attorney-client privilege, which may have had additional prejudicial effects. *See Waterfield v. Waterfield*, 61 N.E.3d 314, 325 (Ind. App. 2016) (implied waiver by making privileged matter relevant to the case). Advising Ziebell to waive his right against self-incrimination and to testify at trial would have been similarly fraught with peril.

Moreover, it is not difficult to imagine how the prosecution might have responded to Ziebell's proposed strategy. In an interview, Everett told detectives that Ziebell knew that Dallas Mackey had died as he arranged for Ronald Mackey's death because Ziebell had also killed Dallas Mackey. PCR Ex. 28 at 9-10. Based on this information, the prosecution may have responded by presenting evidence to support this theory or by simply using Ziebell's concessions regarding his plan to kill Dallas Mackey and his familiarity with the brothers' appearances against him. Finally, the prosecution would have likely placed greater emphasis on the fact that the true

confidential informant remained alive and that Ziebell thus could not have been certain that he had correctly identified the confidential informant at the time of either Mackeys' death. Therefore, Ziebell's claim that trial counsel should have pursued his proposed strategy is not a basis for habeas relief.

### Hearsay Evidence

Ziebell argues that he is entitled to habeas relief because trial counsel did not properly object to Phyllis Gross' testimony about statements by Dean Everett and Allen Gross or to the introduction of her prior recorded statements, which also included statements by Dean Everett and Allen Gross. He maintains that trial counsel should have objected that this evidence violated his rights under the Confrontation Clause.

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him," which includes the right to cross examine such witnesses. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). "The Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him." *Giles v. California*, 554 U.S. 353, 358 (2008). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006). "They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that

the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*

At trial, Phyllis Gross testified about statements made by Ziebell, Everett, and Allen Gross during the planning and commission of the crime. Trial Tr. 127-38. Trial counsel cross- examined Phyllis Gross at length regarding the inconsistencies in her prior statements during interviews with Detective Book and Detective Winters occurring on September 9 and September 12, 2001. *Id.* at 139-47. Trial counsel also focused on Phyllis Gross' inconsistent statements during the cross-examination of Detective Book and Detective Winters. *Id.* at 260-67, 277-81. In response, the prosecution moved to admit the transcripts of the interviews, which contained Phyllis Gross' representations about statements from Allen Gross concerning the commission of the crime and the need to dispose of incriminating clothing in the days following the murder. *Id.* at 282-86. Trial counsel objected on the basis of hearsay. *Id.* The trial court informed the jury that the transcripts would be admitted for the purpose of assessing Phyllis Gross' credibility rather than as substantive evidence. *Id.*

At closing, the prosecution framed Phyllis Gross' testimony as follows:

At the base of the State's case, and I've termed it, well, for lack of a better word, State's less than desirable witness, and I think you all know who I'm referring to. Phyllis Gross, Phyllis Gross, I . . . I don't know whether if you asked her twice what her name was, she'd tell you the same answer. But that's not important. For the purpose of this case, Phyllis Gross is just an object. She is the means to the end as to why Detective Winters and Detective Book found the real killers in the case. The defense is going to make much, she's a liar, you can't trust her. You can't, you can't believe a thing she says. Well, the State's case is more than Phyllis Gross. Now, Phyllis Gross basically led the State to the real killers. Look at her as that. That's the function of that witness.

17

*Id.* at 304. As predicted, trial counsel responded by attacking the credibility of Phyllis Gross. *Id.* at 315-17. In rebuttal, the prosecution argued that, even without Phyllis Gross' testimony, the evidence against Ziebell was compelling and explained that her testimony was not essential to the prosecution's case. *Id.* at 323-28.

At the post-conviction stage, the Court of Appeals of Indiana rejected this claim, reasoning that trial counsel decided to not object more strenuously because the inconsistencies in Phyllis Gross' various accounts bolstered the defense strategy of attacking the credibility of the prosecution's key witnesses. ECF 7-9 at 15-17. After reviewing the record, the court cannot find that the State court made an unreasonable determination on this claim. Given trial counsel's focus of discrediting Phyllis Gross, it was not unreasonable to conclude that allowing the additional statements was a strategic decision.

Further, Ziebell has not demonstrated a violation of the Confrontation Clause. The Confrontation Clause focuses on testimonial hearsay. *Davis v. Washington*, 547 U.S. 813, 823 (2006). "Whether a statement is hearsay and, in turn, inadmissible, will most often hinge on the purpose for which it is offered." *U.S. v. Linwood*, 142 F.3d 418, 425 (7th Cir. 1998). The interview transcripts were not presented to prove the truth of the matters asserted within, so they were not hearsay. There is no indication that the underlying statements from Ziebell, Everett, and Allen Gross were testimonial or were uttered with "the primary purpose of creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 562 U.S. 344, 358–59 (2011). And while the statements of

Phyllis Gross at trial and during the interviews were testimonial, trial counsel had an ample opportunity to cross-examine her and did so at length.

Moreover, even if trial counsel erred by failing to object to the statement of Phyllis Gross, Ziebell has not demonstrated prejudice. At trial, the parties agreed that Phyllis Gross was not a particularly credible witness, and the prosecution expressly asked the jury to consider the case without her testimony. The trial court advised the jury to consider the transcripts only for the purpose of assessing her credibility, and, given that these transcripts included her inconsistent narratives and admissions that she had lied, it is likely that these transcripts had the effect of detracting from Phyllis Gross' credibility even further. Additionally, the probative value of her statements were greatly outweighed by the correspondence she received from Ziebell and Ziebell's confession. Therefore, the claim that trial counsel did not properly object to Phyllis Gross' testimony is not a basis for habeas relief.

## Conflict of Interest

Ziebell argues that he is entitled to habeas relief because of his conflict of interests with Attorney Arnaez and Attorney Clouse as appellate counsel. He argues that this conflict of interests prohibited him from raising his conflict of interests with trial counsel claim and his prosecutorial misconduct claim on direct appeal. "[A] defendant who raised no conflict of interest objection at trial must demonstrate that (1) the defendant's interests conflicted with those of a codefendant represented by the same attorney; and (2) the conflict adversely affected his lawyer's performance." *Taylor v. Grounds*, 721 F.3d 809, 818 (7th Cir. 2013). Absent a showing of conflict of interests

caused by multiple concurrent representation, the *Strickland* analysis applies, and a

defendant must demonstrate a reasonable likelihood that the outcome of the proceeding

would have been different as required. *Mickens v. Taylor*, 535 U.S. 162, 174 (2002).

Attorney Arnaez and Attorney Clouse were appointed as trial counsel in the

month preceding the trial. ECF 7-1 at 16. On the morning of trial, Ziebell moved to

terminate counsel, explaining as follows:

> Yeah, my court-appointed counsel has consistently demonstrated
> incompetent behavior. My appointed counsel has redundantly coerced me
> to adopt the plea of guilty in the face of my innocence with the implied
> threat of you yourself in your capacity and the prosecutor attorney
> making me serve the rest of my life in prison. My court-appointed counsel
> has shown deliberate indifference to my defense so much so that alibi and
> material witnesses crucial to my defense have been dismissed as
> important but not necessary. My court-appointed counsel has blatantly
> lied to me and withheld information that could be crucial to substantiate
> my alibi. I do not believe that they are acting in my best interest in
> accordance with law and justice.

Trial Tr. 5-6. Attorney Clouse and Attorny Arnaez each expressed frustration with the

manner in which Ziebell had criticized their performance. *Id.* at 14-20. The trial court

allowed Attorney Clouse to withdraw, and Attorney Arnaez served as counsel

throughout trial. *Id.* Attorney Clouse and Attorney Arnaez also served as appellate

counsel. ECF 7-3.

At the post-conviction stage, the Court of Appeals of Indiana rejected the claim

regarding a conflict of interests with appellate counsel, reasoning that Ziebell's concerns

with appellate counsel arose from a disagreement in trial strategy rather than a conflict

of interests caused by the representation of multiple parties. ECF 7-9 at 23-25. The

appellate court's determination was not unreasonable. Ziebell has not described a

conflict of interests as contemplated by the Supreme Court of the United States'
constitutional jurisprudence. *See* 28 U.S.C. 2254(d)(1). Moreover, while it is true that
Attorney Clouse and Attorney Arnaez could not raise the conflict of interests claim
regarding their own representation and did not raise the prosecutorial misconduct
claim on direct appeal, it is unclear how this prejudiced Ziebell given the Court of
Appeals of Indiana's consideration and rejection of these claims on their merits on post-
conviction review. Therefore, the claim regarding Ziebell's conflict of interests with
appellate counsel is not a basis for habeas relief.

<u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a
certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. §
2253(c), the petitioner must make a substantial showing of the denial of a constitutional
right by establishing "that a reasonable jurist could debate whether (or, for that matter,
agree that) the petition should have been resolved in a different manner or that the
issues presented were adequate to deserve encouragement to proceed further." *Slack v.
McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no
basis for encouraging Ziebell to proceed further.

For these reasons, the court DENIES the habeas corpus petition (ECF 1); DENIES
a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and
DIRECTS the clerk to enter judgment in favor of the Respondent and against the
Petitioner.

SO ORDERED this May 24, 2021.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge